## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| In re:<br><br>SURGE TRANSPORTATION, INC.,<br><br>Debtor. | Case No. 3:23-bk-1712-JAB<br>Chapter 11 |
| BAXTER BAILEY & ASSOCIATES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TRIUMPH FINANCIAL SERVICES LLC<br><br>Defendant. | A.P. No. _____ |

### ADVERSARY COMPLAINT

Baxter Bailey & Associates, Inc. ("BBA") files this Adversary Complaint against Triumph Financial Services LLC ("Triumph") and states as follows:

### PARTIES

1. BBA is a Mississippi corporation with its principal place of business in Southaven, Mississippi.

2. Triumph is a Delaware limited liability company with its principal place of business in Dallas, Texas.

### JURISDICTION

3. On July 24, 2023, Surge Transportation, Inc. ("Surge") filed a voluntary petition under Chapter 11, Title 11 of the United States Code § 101, *et seq*. (the "Bankruptcy Code"), in

the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court").

4. This adversary proceeding seeks an adjudication of competing ownership claims between non-debtors to property that BBA contends is not the property of the bankruptcy estate.

5. As such, this is a non-core matter pursuant to 28 U.S.C. § 157.

6. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) as a matter related to a case under title 11.

7. Venue is proper pursuant to 28 U.S.C. § 1409.

8. BBA does not consent to the entry of final orders or judgment by the bankruptcy court.

## FACTUAL BACKGROUND

9. This matter arises from the failure of a freight broker and the shippers and/or consignees to pay interstate motor carrier freight charges.

10. BBA is in the business of collecting unpaid freight charge receivables that are assigned to BBA by motor carriers and/or other assignees of motor carriers.

11. Within the course of BBA's business, BBA has been assigned the rights to collect over $610,000 in unpaid freight charges for the transportation services rendered by over 210 motor carriers (the "Motor Carriers") for prepetition shipments of freight brokered by Surge.

### Origin of the Freight Charges at Issue in the Case

12. Surge is or was a federally license freight broker engaged in the business of arranging for the transportation of its customers' freight via motor carriers.

13. Surge was hired by its customers (who were generally shippers and/or consignees) (the "Shippers") to arrange the logistics of the shipments of freight on behalf of the Shippers.

14. Upon information and belief, the Shippers and Surge entered into written and/or oral agreements governing their relationships (the "Broker-Shipper Agreements").

15. The Shippers conferred to Surge the authority to select the Motor Carriers and bind the Shippers to the terms of the shipments.

16. Surge selected the Motor Carriers to actually transport the shipments.

17. Upon information and belief, the Motor Carriers entered into written agreements with Surge governing their relationships (the "Broker-Carrier Agreements").

18. Surge negotiated with the Motor Carriers to establish the rates for the shipments on behalf of the Shippers.

19. Bills of lading were executed for each of the shipments identifying the respective shippers, consignees, and Motor Carriers for each of the shipments brokered by Surge.

20. The Motor Carriers transported the shipments of freight.

21. Pursuant to the Broker-Carrier Agreements, the Motor Carriers submitted their invoices for the freight and related charges for the shipments directly to Surge.

22. For its brokerage services, Surge was entitled to a commission or markup for each shipment (the "Commissions").

23. The Commissions were independent and separate from the freight charges owed to the Motor Carriers.

24. As a contractual condition, in exchange for Surge paying the Motor Carriers, the Motor Carriers agreed to submit invoices for the freight charges due from the Shippers to Surge and that Surge would invoice the freight charges together with Surge's Commissions in one bill.

25. The Motor Carriers did not waive any rights to collect freight charges from the Shippers in the event that Surge failed to pay the freight charges owed to the Motor Carriers.

26. The terms of the Broker-Carrier Agreements vary among the Motor Carriers, but the Broker-Carrier Agreements incorporate the terms of the standard truckload bill of lading and/or uniform bill of lading.

27. The Motor Carriers reasonably believed that Surge intended to pay the Motor Carriers their freight charges when the Motor Carriers agreed to the terms of the Broker-Carrier Agreements and when the Motor Carriers accepted shipments for the benefit of Surge and the Shippers.

28. The Motor Carriers would not have entered the Broker-Carrier Agreements or performed the transportation services for the Shippers' benefit if the Motor Carriers believed that Surge did not intend to pay the Motor Carriers their freight charges.

29. The Motor Carriers performed the transportation services required for each of the shipments but were not paid by Surge or the Shippers.

**Triumph's Involvement**

30. Triumph is a factoring company that factors both motor carrier and freight broker receivables including factoring some of Surge's brokerage receivables and factoring some of the motor carrier freight charge receivables for shipments brokered by Surge.

31. As security for factoring Surge's freight broker receivables, Triumph received assignments of Surge's claims for the factored shipments and was granted a first-priority security interest in all of Surge's other assets—including receivables not factored by Triumph.

32. In exchange for factoring Surge's freight broker receivables, Triumph's contract with Surge allowed Triumph to retain factoring and associated fees.

33. While Triumph was aware that the freight charge portion of invoices issued by Surge to its customers belonged to motor carriers, like those that Triumph also factored, Triumph

factored the entirety of Surge's invoices and failed to ensure that all carriers were paid their freight charges before Surge applied the factored funds elsewhere.

34. After Surge filed bankruptcy, Triumph reported that it was owed $7,974,276,01 in unpaid debt associated with its factoring of Surge's freight broker receivables.

35. Triumph claims ownership of all portions of Surge's prepetition receivables, including the freight charges owned by the Motor Carriers for shipments that were never factored by Triumph, and has instructed Shippers to not pay BBA or the Motor Carriers the freight charges rightfully owed for the motor carrier services performed on the brokered shipments.

36. Triumph's actions of dominion over BBA's property have impaired and continue to impair BBA's rights to the freight charges it is owed as the assignee of the Motor Carriers.

37. Upon information and belief, Triumph has and continues to collect prepetition freight charges from Shippers, for shipments transported by the Motor Carriers, and without paying the freight charges owed to BBA for the Motor Carriers' services.

**Procedure for Contesting Ownership of Prepetition Freight Charges**

38. On August 29, 2023, the Bankruptcy Court entered a *Final Order Approving Debtor-in-Possession Financing and Pre-Petition Factoring and Security Agreement with Triumph Financial Services LLC* (Dkt. 112) (the "DIP Order").

39. While the DIP Order did not adjudicate any ownership of prepetition freight charges, the DIP Order required any party-in-interest, like BBA, to commence a proceeding "contesting, or otherwise seeking a declaration of Triumph's ownership interest in any prepetition Purchased Accounts, the validity, enforceability, priority of the liens and security interest granted to Triumph in the prepetition Collateral, including non-Purchased Accounts," within 60 days of entry of the DIP Order. (Dkt 112 at ¶ 24).

40. This Adversary Proceeding was filed within 60 days of the DIP Order.

## COUNT I:
## DECLARATION OF RIGHTS TO PREPETITION FREIGHT CHARGES

41. BBA hereby incorporates the preceding paragraphs as if set forth fully at length herein.

42. Pursuant to 28 U.S.C. § 2201, BBA requests a declaration of BBA's and Triumph's respective rights, interests, and ownership of prepetition freight charges on shipments brokered by Surge and transported by the Motor Carriers.

WHEREFORE, Baxter Bailey & Associates, Inc. respectfully requests that judgment be entered in its favor by the district court pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the rights and other legal relations of the parties, awarding costs, attorneys' fees, and interest to Baxter Bailey & Associates, Inc., and specifically declaring:

(1) Baxter Bailey & Associates, Inc. is the sole owner of the rights and interests to the freight charges owed for the transportation services rendered by its assignor motor carriers;

(2) Baxter Bailey & Associates, Inc. may lawfully pursue collection of the unpaid freight charges from the shippers and/or consignees stated on the bills of lading;

(3) Triumph Financial Services LLC does not own the rights and interests to the freight charges owed for the transportation services rendered by Baxter Bailey & Associates, Inc.'s assignor motor carriers which remain unpaid to Baxter Bailey & Associates, Inc.;

(4) The portion of any receivables collected by Triumph Financial Services LLC, for itself and/or Surge Transportation, Inc., which are for the freight charges owed for the transportation services rendered by Baxter Bailey & Associates, Inc.'s assignor motor carriers which remain unpaid to Baxter Bailey & Associates, Inc. are property of Baxter

Bailey & Associates, Inc. held in trust for the benefit of Baxter Bailey & Associates, Inc.; and

(5) Triumph Financial Services LLC must make an accounting of all freight charges in its possession and/or which have been collected or otherwise held by Triumph Financial Services LLC and/or its affiliates, which are owed to Baxter Bailey & Associates, Inc. and pay those amounts to Baxter Bailey & Associates, Inc. within 30 days; and

(6) Such other award as the court deems just.

Dated: September 13, 2023

COHEN & PALOMBO P.C.

/s/ Jeffrey D. Cohen
Jeffrey D. Cohen (*pro hac vice*)
Timothy L. Frey (*pro hac vice*)
The Times Building
32 Parking Plaza, Suite 402
Ardmore, PA 19003
Telephone: 215-609-1110
Facsimile: 215-609-1117
jcohen@freightlaw.net
tfrey@freightlaw.net

*Attorneys for Baxter Bailey & Associates, Inc.*